UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shiv P. Singh and Walter O. Singh,  Civil No. 09-1722 (PAM/RLE)

Plaintiffs,

v.  **MEMORANDUM AND ORDER**

Justin Frisch, acting in his individual
capacity and as deputy of the Kanabec
County Sheriff's Department,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Plaintiffs Shiv P. Singh and Walter O. Singh are brothers, and are appearing in this matter pro se. They are also frequent litigants in this District, each filing ten different cases since 2000. Many of the cases involve their neighbors, Latchman and Indrani Hannuman, who are also the Singhs' sister and brother-in-law, and Balguni Singh, who is the Singhs' father. At least four of the cases make claims against some governmental entity, whether a police department, police officer, county, city, or the State of Minnesota.

On two prior occasions, Judges of this Court have ordered that the Singhs must receive permission of the Court before filing any lawsuits against the Hannumans. Sept. 12, 2008, Order (Docket No. 12) in Singh v. Hannuman, No. 08-423 (PJS/JJK); Feb. 2, 2009, Order (Docket No. 34) in Singh v. Hannuman, No. 08-1255 (DWF/SRN). A Report and

Recommendation in the first matter described a "long-standing, bitter, and very litigious family feud between these parties." (R&R in No. 08-423 (Docket No. 11) at 2.) The instant case appears, at least in part, to be an attempt to circumvent those prohibitions by filing a lawsuit against a third party. Indeed, one of the pieces of "evidence" the Singhs submitted in opposition to the Motion for Summary Judgment here is a videotape of various wrongs allegedly committed by the Hannumans against the Singhs.

The facts underlying the instant lawsuit are as follows. In June 2009, Deputy Justin Frisch of the Kanabec County Sheriff's Department was called to the home of Latchman Hannuman,[1] Shiv and Walter Singh's neighbor and brother-in-law. The properties at issue here are in rural Minnesota, on the border between Pine County and Kanabec County. Mr. Hannuman reported to Deputy Frisch that his fence had been damaged and shared his suspicion that Walter Singh had perpetrated the damage. Deputy Frisch examined the damage and photographed some footprints and tire tracks in the area. He then walked across the road to Plaintiffs' property, where he saw similar footprints near the mailbox. Deputy Frisch entered the property and eventually came upon Walter Singh, who was standing outside his camper trailer. Deputy Frisch asked to speak with him. Walter Singh agreed and walked to the back of Deputy Frisch's squad car.

Walter alleges that Deputy Frisch handcuffed him at that point. Deputy Frisch denies ever handcuffing Walter. In any case, Walter asked Deputy Frisch to take him to see the

---

[1] The Deputy spells Mr. Hanuman's name with only one "n" but it is spelled with two "n"s in other lawsuits, and the Singhs spell it with two.

damaged fence. According to Deputy Frisch, Walter also gave him permission to photograph the bottom of Walter's boot, although Walter now denies this. Deputy Frisch also photographed the tires on Walter's truck. (Angolkar Aff. Ex. C (photographs).) The footprints near the damaged fence appear to match Walter's boot exactly. At some point when the two were looking at the damage, Deputy Frisch began taping their conversation. (Angolkar Aff. Ex. E (audiotape).)

Deputy Frisch told Walter that he had a camera mounted on the fence that showed Walter in the ditch near the damaged fence. In fact, there was no such camera. Deputy Frisch was attempting to get Walter to admit to damaging the fence, but Walter adamantly denied being in the ditch or damaging the fence. The conversation at times was heated but other than slightly raised voices, there is no evidence that Walter and the Deputy had any physical contact or engaged in a scuffle of any sort. Nor was there any indication that Walter was handcuffed. In fact, the conversation clearly indicates that Walter was not handcuffed. (See id. Ex. F (Transcript of audiotape) at 16 (Deputy Frisch stated to Walter, "you can go ahead and get back in the other side [of the car.]").)

Deputy Frisch and Walter returned to the squad car and Deputy Frisch drove Walter back to his property. Deputy Frisch asked Walter whether he could look around the property. Walter consented, but told Deputy Frisch that he could not go into the pole barn that was on the property. (Id. at 21-23 (Deputy Frisch: "Okay, do you mind if I have a look around out here?" Walter: "You can look around if you want.").)

Deputy Frisch walked around the farmyard briefly, noticing only a burn pile. He

testified that after warning Walter that garbage-burning was illegal, he left the property. (Id. Ex. B (Frisch Dep.) at 12.)

Walter claims that, during the conversation between himself and Deputy Frisch, Deputy Frisch became angry and slammed Walter against the squad car, handcuffed him, and went into the pole barn. In their memorandum in opposition to the Motion, Plaintiffs contend that not only did Deputy Frisch assault Walter, but he went into Plaintiffs' home, ransacked the bedroom, "ripping mattress covers, emtying [sic] drawers etc." (Pls.' Opp'n Mem. at 2.) They allege that Deputy Frisch detained Walter for two hours, that he went into the pole barn without permission, and that he dismantled the rear gate of Plaintiffs' farm. No other witnesses recalled any of these events.

The Complaint contains no counts, but rather recites the alleged wrongful acts committed by Deputy Frisch, including allegedly accusing the Singhs of:

> growings everal [sic] marihuana plants on horse farm, in possession and distribution of cocaine, manufacturing illegal spirits, gambling equipments, printing press for counterfeit money, stole goods, tools, equipments, automatic assault rifles, MP-5 machine guns, still for brewering [sic] beer, bomb making material, blasting caps, childrenporn [sic] pictures, movies, books, having white women prostitues [sic] brings money topurchasedrugs.[sic] stolen tractor, cars, mobile home, motor home, stolen horses.

(Compl. ¶ 10.) Reading the Complaint liberally, it appears that Plaintiffs' claims arise under 42 U.S.C. § 1983 and Minnesota tort law. They claim excessive force, warrantless search, and unreasonable seizure in violation of their constitutional rights. They also claim assault and battery, a violation of their equal protection rights, false arrest or imprisonment, and perhaps intentional and/or negligent infliction of emotional distress. They seek damages for

4

"great pain, embarassment [sic], humilation [sic] and mental suffering" of $1 million (Compl. ¶ 24), plus punitive damages, costs, and attorney's fees.  However, only Walter has standing to bring most of the claims raised in the Complaint.  The only claim that relates to Shiv is the Fourth Amendment warrantless search claim, because Shiv is the owner of the property that Deputy Frisch allegedly searched.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.     Qualified Immunity**

5

Qualified immunity shields Deputy Frisch from suit on Plaintiffs' federal claims if he reasonably believed that his conduct was lawful "in light of clearly established law and the information possessed" by him at the time of the alleged incident. Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Qualified immunity is "immunity from suit rather than a mere defense to liability." Hunter v. Bryant, 502 U.S. 224, 227 (1991). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter, 502 U.S. at 229 (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).

On a motion for summary judgment, the Court undertakes a three-part inquiry to determine whether a defendant is entitled to qualified immunity. As noted by Deputy Frisch, however, the order in which the Court must address the three prongs may vary from case to case. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). First, the plaintiff must assert a violation of a constitutional or statutory right. Second, that right must be clearly established. Third, taking the facts in the light most favorable to the plaintiff, "there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right." Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999). Although an official's entitlement to qualified immunity is a question of law, if there are genuine disputes as to the facts material to the qualified immunity determination, summary judgment is not appropriate. Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir.1994).

Plaintiffs have failed to show that any genuine issue of fact supports their claim for a violation of their constitutional rights. Plaintiffs contend that it is "undisputed" that their rights were violated, but cite to no evidence in support of this bald statement. And indeed Deputy Frisch vigorously disputes that he violated anyone's constitutional rights whatsoever. Moreover, the evidence does not show that Deputy Frisch knowingly violated any constitutional rights. The audio tape shows that there was no physical altercation between Deputy Frisch and Walter, and that Walter gave Deputy Frisch permission to search the property with the exception of the pole barn. Plaintiffs have failed to show either that Deputy Frisch used excessive force against Walter, or that he searched their property without their consent in violation of the Fourth Amendment.

Further, Plaintiffs' contention that Deputy Frisch "arrested" Walter is not supported by the record. Even assuming that Deputy Frisch handcuffed Walter, which Deputy Frisch denies, it is undisputed that any handcuffing was of limited duration to allow Deputy Frisch to investigate the situation. There was no arrest and thus there can be no claim for a warrantless arrest. Nor can there be a claim for false arrest or false imprisonment. The record does not bear out these claims.

There is no mention of the equal protection claim in Plaintiffs' papers, and thus it appears that they are abandoning this claim. Likewise, Plaintiffs do not mention the purported conspiracy between Deputy Frisch and the Hannumans, and appear also to have abandoned their § 1985 claim.

Plaintiffs' federal claims are without merit and must be dismissed.

**B.     Official Immunity**

Under Minnesota law, public officials are automatically entitled to official immunity when their duties require the exercise of discretion. Johnson v. Morris, 453 N.W.2d 31, 41-42 (Minn. 1990). Police officers generally are classified as discretionary officers entitled to immunity. Id. at 42. There is no question that Deputy Frisch was performing a discretionary function during the incident in question. Thus, he is entitled to absolute immunity unless his actions were "malicious or willful." Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001).

There is absolutely no evidence that any of Deputy Frisch's actions were malicious or willful. Plaintiffs' allegations are so fanciful as to be beyond belief, and they are not supported by evidence in the record. Deputy Frisch is entitled to official immunity against all of Plaintiffs' state-law tort claims, and those claims must be dismissed.

**C.     Meritless Litigation**

As noted in the introduction to this Order, the Singhs, together and separately, have brought more than their share of federal lawsuits over the last ten years. See R&R (Docket No. 25) in Singh v. Persaud, No. 07-2148 (DWF/SRN), at 2-4 (discussing Plaintiffs' numerous federal lawsuits). Every one of these lawsuits has been dismissed prior to trial.[2] And, as discussed previously, both Singhs have been ordered to stop filing federal lawsuits against their family members and neighbors. These orders have not deterred them, however,

---

[2] One lawsuit, Singh v. Wackenhut Corp., No. 09-1836 (PAM/AJB) remains pending.

as evidenced by this lawsuit. Although brought against Deputy Frisch, the lawsuit clearly arises out of, and is grounded in, the long-simmering family dispute that is the basis for nearly every other lawsuit the Singhs have filed.

Federal court is not the appropriate place to resolve family feuds. Moreover, forcing cities, counties, and municipalities to litigate patently meritless claims in case after case turns the notion of justice on its head. The taxpayers of the government entities involved in the Singh's numerous frivolous lawsuits deserve better.

Thus, it is necessary to order that the Singhs be precluded from filing any further lawsuits in the District of Minnesota without receiving either prior permission of a Judge of this Court or securing the services of an attorney.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Motion for Summary Judgment (Docket No. 9) is **GRANTED**;

2. The Complaint (Docket No. 1) is **DISMISSED with prejudice**; and

3. Plaintiffs Shiv P. Singh and Walter O. Singh must either seek permission of a Judge of this Court prior to filing any further lawsuits in the United States District Court for the District of Minnesota, or must secure the services of a licensed attorney to file any further lawsuits in this District.

Dated:   May 18, 2010

*s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge